NATIONAL WIRE MATTRESS Co. *v.* NEW YORK BRAIDED-WIRE MATTRESS Co.

*(Circuit Court, S. D. New York. April 23, 1884.)*

1. PATENTS—BED-BOTTOM—INFRINGEMENT.

   Neither the first claim of reissued letters No. 5,312 nor reissues 9,919 or 9,920, if restricted within the limits of the original claims, which is essential to their validity, is infringed by a bed-bottom of continuous zigzag wires, linked together at the corners of diamond-shaped figures, and connected at each end to the ends of the frame by springs.

2. SAME—NOVELTY.

   The third claim of reissue 5,312, for an iron corner piece with a flange, is void, having been substantially anticipated by patent No. 113,559.

In Equity.
*Charles E. Mitchell* and *Benj. F. Thurston,* for orator
*George W. Dyer,* for defendant.

WHEELER, J. This suit is brought upon the first and third claims of reissued letters patent No. 5,312, granted to the orator as assignee of Andrew Turnbull and Rodolphus L. Webb, for an improvement in bed-bottoms, dated March 4, 1873; and upon reissued letters patent Nos. 9,919 and 9,920, granted to the orator as assignee of Edwin S. Field for improvements in spring bed-bottoms, dated November 1, 1881. The original of the former, which had been previously reissued in No. 5,185, was dated April 9, 1872; and those of the latter were dated May 6, 1873. The defenses are want of novelty, variance between the originals and the reissues, and lack of infringement. The first claim of the Turnbull and Webb reissue was sustained by decree in the district of Connecticut in 1875, and in the district of Massachusetts in 1878, but upon a somewhat different case. The patent of Charles Bigeon, dated January 16, 1872, was not introduced. All these bed-bottoms are made of wire. Wire bed-bottoms suspended on spiral springs attached to the frame of the bed, and bed-bottoms made of elastic looped wire, were known before. To have that part of the bed about an occupant yield and shape itself to the person of the occupant without disturbing other parts of the bed was desirable, as well as a generally yielding surface. Wire bottoms attached to the frame of the bed, or bottoms attached to frames suspended on springs, would not give this independent conformation to the person. It could be accomplished by having the longitudinal strands sufficiently yielding without any or but loose connection with each other. Bigeon's patent showed these independent strands, made elastic throughout by being looped. Turnbull and Webb formed them of wire links and rings, and made them elastic by coiled springs at each end, and connected them loosely with one another by transverse links between the rings. This part of their invention consisted really in making the strands elastic at their ends only, instead of throughout, and dividing them into rings and links; or in taking out the end pieces between the horizontal strands and springs to which they were suspended, as shown in the patent of F. Stanley Bradley, No. 74,293, of February 11, 1868, and connecting the springs directly with the strands. The first claim of the original patent was for these springs attached to end-bars and combined with these links. This claim was surrendered, and a broader claim taken for a bed-bottom composed of jointed links, made elastic longitudinally by the springs. The defendant's bed-bottom has continuous zigzag wires, linked together at the corners of diamond-shaped figures, and connected at each end to the ends of the frame by springs. This claim of this reissue is either too narrow for the defendant's bed, or too broad for the original invention and claim. If the defendant might be said to have the combination of the spring with the strand to connect it with the end piece, the claim which covered that combination has been surrendered, to make room for the new claim, which does not cover that by itself so as to protect it. The former decrees were not only made without ref-

erence to the Bigeon patent, but when much less strictness in comparing reissued patents with originals was required.

The third claim of this reissue is for a corner iron to connect the end pieces with the side rails, and to support the strain upon the end pieces by a flange on the iron extending nearly to the top of the end pieces, against which they bear directly. This flange, without reference anywhere to other parts of the iron, or any mode of attachment of the iron to the rails, is the distinctive feature of this claim. A similar flange for the same purpose is shown in the prior patent of George C. Perkins, No. 113,559, dated April 11, 1871. If there is any difference as to this patented feature of the flange, it consists in making the flange sufficiently lower than the top of the end piece, to be out of the way of the attachments of the springs. The difference of construction would be so obvious to any competent mechanic as not to amount to a patentable invention.

The original of the first Field reissue was for a netting composed of V-shaped links hooked together in a peculiar manner, and a link for forming the straight edges of the netting. The links made diamond-shaped figures. The reissue is for the combination in a bed-bottom of rails, end pieces, springs, and netting, composed of continuous diamond-shaped figures, and for the netting and links of the original. The original patent would not cover anything in the defendant's bed. What would cover anything in it is merely expansion of the original, and, as now understood, void.

The original of the second Field reissue was for peculiar links as a component part of a bed-bottom, and a bed-bottom composed of such links. The reissue is for connected and continuous zigzag wires connected with end rails by springs in a bed-bottom. There is nothing in this reissue, that is not an expansion from the original, which would cover anything in the defendant's structure. The result is that the defendant does not infringe anything that is valid in any of the orator's patents in controversy.

Let there be a decree dismissing the bill of complaint, with costs.